UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

---

LINDA L. LESPERANCE,

    Plaintiff,

v.

SAULT STE. MARIE TRIBE
OF CHIPPEWA INDIANS,

    Defendant.

_____/

Case No. 2:16-cv-232
HON. ROBERT J. JONKER

## **OPINION**

Plaintiff fell and hurt herself in a tribal store. She sued the Tribe in tribal court and lost because the tribal court found that Plaintiff failed to comply with the procedural requirements embedded in the Tribal ordinance waiving sovereign immunity for injuries in public buildings. Plaintiff then filed this federal action to overturn the decision of the tribal court system. The Court has sympathy for Plaintiff's position on the particulars of this record, but the Court has no jurisdiction to overturn the Tribe's application of its own sovereign immunity ordinance in its own tribal courts. If Plaintiff has a remedy, it is with Congress, or on direct application to the Tribal council, a possibility the Tribal Court of Appeals itself noted. *See Lesperance v. Sault Ste. Marie Tribe of Chippewa Indians*, APP-16-01, at 6 (July 14, 2016).

### **Background**

On April 14, 2011, Linda L. Lesperance tripped while entering into the St. Ignace Midjim Convenience Store, a public building owned by the Tribe. Lesperance fractured both wrists and two vertebrae, and received five stiches above her left eye. Shortly thereafter, on April 18, 2011, Patti Simi—a customer representative in the Tribe's insurance

department—called Lesperance at her home. Ms. Simi informed Lesperance and her husband that she would be assisting with paying medical bills and out of pocket expenses that were a result of the fall. Over the next several months, Ms. Simi continued to call Lesperance to check on how she was doing.

On May 4, 2011, Ms. Simi requested Lesperance to prepare a document outlining the incident and her injuries. In addition, Ms. Simi asked Lesperance to come up with an amount of money that she thought was fair to cover all of her pain and suffering. Lesperance and her husband subsequently mailed to Ms. Simi a two-page letter, which requested between $45,000 and $50,000. Ms. Simi and Lesperance remained in contact through phone calls, letters, and emails until Lesperance hired an attorney in May 2012.

On May 2, 2013, Lesperance's attorney sent a claim of damages to the Tribal Secretary via certified mail, seeking economic damages in the amount of $1,716,201. After not receiving a response from the Tribe, on December 6, 2013, Lesperance filed a complaint in Sault Ste. Marie Chippewa Tribal Court seeking $1,926,000 in damages.[1] She alleged that the Tribe violated the Public Building section of the Tribal Tort Claims Ordinance, which provides:

> The Tribe has an obligation to repair and maintain public buildings under its control when open for use by the public. The Tribe is liable for personal injury and property damage resulting from a dangerous or defective condition of a public building owned or occupied by the Tribe if the Tribe had actual or constructive knowledge of the defect and, for a reasonable time after acquiring knowledge, failed to remedy the condition or to take action reasonably necessary to protect the public against the condition. Knowledge of the dangerous and defective condition of the public building and time to repair the same shall be conclusively presumed when such defect existed so as to be readily apparent to an ordinarily observant person for a period of 90 days or longer before the injury took place.

---

[1] Lesperance's husband was also a plaintiff in the case and asserted a loss of consortium claim. The tribal court subsequently dismissed the consortium claim. Lesperance's husband did not appeal the dismissal.

> (2) As a condition to any recovery for injuries sustained by reason of any dangerous or defective public building, the injured person, within 120 days from the time the injury occurred, shall serve a notice on the Tribe of the occurrence of the injury and the defect. The notice shall specify the exact location and nature of the defect, the injury sustained and the names of the witnesses known at the time by the claimant. The notice shall be served on the Tribal Secretary, 523 Ashmun Street, Sault Ste. Marie, Michigan 49783, either personally or by certified mail, return receipt requested.

Tribal Code § 85.106.

At the trial-level tribal court, the court granted the Tribe's motion for summary judgment and dismissed the case. *Lesperance v. Sault Ste. Marie Tribe of Chippewa Indians*, Case No. T-14-01 (Dec. 15, 2015). The court stated that although the Tribe waived sovereign immunity for some tort claims, the waiver was conditioned on the party complying with the notice provisions of the Tribal Tort Claims Ordinance. *Id.* at 3. Based on the plain language of Tribal Code § 85.106(2), the court found that Lesperance was required to serve the notice of claim on the Tribal Secretary by personal service or certified mail. *Id.* Because Lesperance mailed the letter—not by certified mail—to Ms. Simi and not the Tribal Secretary, the court found that Lesperance did not comply with the notice provision. *Id.* Finally, the court rejected Lesperance's argument that her claim should be allowed because the Tribe was not prejudiced by the defective notice. *Id.* at 4. The court reasoned that the plain language of the code did not permit the court to apply a prejudice requirement. *Id.* Lesperance subsequently appealed to the tribal court of appeals.

The Tribal Court of Appeals affirmed the tribal court's order dismissing the case. *Lesperance v. Sault Ste. Marie Tribe of Chippewa Indians*, APP-16-01 (July 14, 2016). The court began its opinion by stating that the primary issue in the case was "not whether [the Tribe] waived its tribal sovereignty at all, but whether [Lesperance's] failure to comply with the

requirements of waiving tribal sovereign immunity under Tribal Code [§] 85.106 is a jurisdictional bar precluding their claim." *Id.* at 7, n.23. In accordance with Tribal Code § 81.105, the court answered the jurisdictional question by first applying tribal law and any laws of the United States that may apply. *Id.* at 7.

The court held that both tribal law and federal law supported the decision that the failure to follow the notice requirements was a jurisdictional issue. First, the court reasoned that the plain language of the tribal code—specifically Tribal Code § 81.103—states that the tribal court has jurisdiction over cases only when the Tribe has expressly waived its sovereign immunity. *Id.* The court also noted that a different tribal court had treated a similar notice provision as a jurisdictional issue. *Id.* at 8 (citing *Nguyen v. Spirit Mountain Casino*, C-04-06-022 (Nov. 1, 2004). Second, the court determined that federal law supports its interpretation because federal courts hold that they lack jurisdiction when a tribe is entitled to tribal sovereign immunity. *Id.* at 8-9 (citing *Lincoln v. Saginaw Chippewa Indian Tribe of Michigan*, 967 F. Supp. 966 (E.D. Mich. 1997), aff'd, 156 F.3d 1230 (6th Cir. 1998)).

The Tribal Court of Appeals rejected Lesperance's appeal to federal case law on equitable tolling. First, the Court of Appeals found the cases inapplicable because they did not involve tribes or tribal law. But second, even applying the cases on their own terms, the Court of Appeals found they supported a decision against Lesperance. The court reasoned that the tribal code used "both exceptional, emphatic language and speaks specifically to the tribal court's jurisdiction[.]" *Id.* at 9. Because the notice provision was jurisdictional, the court determined that it could not apply equitable tolling as Lesperance requested. Finally, the court found that even if equitable tolling could apply to this case, Lesperance had not met her burden to show that

she was entitled to equitable tolling under the five factor test stated in *Glarner v. Dep't of Veterans Admin.*, 30 F.3d 697 (6th Cir. 1994).

The court also rejected Lesperance's argument that she was denied "equitable due process." *Id.* at 15. The court stated that it was unclear what Lesperance meant by due process or how it was applicable to the Tribe. *Id.* Nonetheless, the court held that Lesperance was not deprived of due process because Tribal Code § 85.106 provided her with a clear procedure to pursue her claim against the Tribe.

Lesperance filed this Petition to Vacate the Tribal Appellate Court Decision. (ECF No. 1.) She argues that the tribal court decision denied her right to due process and access to the courts because it failed to apply equitable tolling, waiver, and estoppel as mandated by federal law. In addition, Lesperance argues that she was denied due process because the tribal court made factual errors when it determined that even if equitable tolling could apply, Lesperance did not meet the *Glarner* five factor test. She requests that this Court vacate the tribal court of appeals decision and remand this case to tribal court for a trial on the merits.

## Discussion

**I. Tribal Sovereign Immunity**

"Indian tribes are domestic dependent nations that exercise inherent sovereign authority." *Michigan v. Bay Mills Indian Community*, 134 S. Ct. 2024, 2030 (2014) (internal quotation marks omitted). "Among the core aspects of sovereignty that tribes possess . . . is the 'common-law immunity from suit traditionally enjoyed by sovereign powers.'" *Id.* (quoting *Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 58 (1978)). Thus, "[a]s a matter of federal law, an Indian tribe is subject to suit only where Congress has authorized the suit or the tribe has waived its immunity." *Kiowa Tribe of Okla. v. Mfg. Techs., Inc.*, 523 U.S. 751, 754 (1998). Congress

may abrogate tribal immunity only if its intentions are "unequivocally expressed" and not simply implied. *Santa Clara Pueblo*, 436 U.S. at 58. Similarly, a tribe may waive its immunity only if such a waiver is "clear." *C & L Enters., v. Citizen Band Potawatomi Indian Tribe of Okla.*, 532 U.S. 411, 418 (2001).

Over the past several decades, the courts have questioned the proper scope and limits of the doctrine of tribal sovereign immunity. The Supreme Court has recognized that tribal sovereign immunity "developed almost by accident." *Kiowa Tribe*, 523 U.S. at 756. *See also Oklahoma Tax Comm'n v. Citizen Band Potawatomi Indian Tribe of Oklahoma*, 498 U.S. 505, 514 (1991) (Stevens, J. concurring) ("The doctrine of sovereign immunity is founded upon an anachronistic fiction."). In *Kiowa Tribe*, the Court stated that *Turner v. United States*, 248 U.S. 354 (1919), which was often the case cited in support of the existence of tribal sovereign immunity, never expressly held that any such doctrine existed. 523 U.S. at 756-57. The Court found that *Turner* "is, at best, an assumption of immunity for the sake of argument, not a reasoned statement of doctrine." *Id.* at 757. Nonetheless, the Court determined that "*Turner's* passing reference to [tribal] immunity [became] an explicit holding that tribes had immunity from suit." *Id.* at 757. (citing *Puyallup Tribe. v. Dep't of Game of State of Wash.*, 433 U.S. 165, 172-73 (1977); *Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 58 (1978); *Three Affiliated Tribes of Fort Berthold Reservation v. Wold Engineering*, 476 U.S. 877, 890-91 (1986); *Blatchford v. Native Vill. of Noatak*, 501 U.S. 775, 782 (1991); *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 268 (1997)).

After acknowledging the almost inadvertent development of tribal sovereign immunity, the Court questioned whether the reasoning behind sovereign immunity is still applicable in today's economy. The Court stated:

> There are reasons to doubt the wisdom of perpetuating the doctrine. At one time, the doctrine of tribal immunity from suit might have been thought necessary to protect nascent tribal governments from encroachments by States. In our interdependent and mobile society, however, tribal immunity extends beyond what is needed to safeguard tribal self-governance. This is evident when tribes take part in the Nation's commerce. Tribal enterprises now include ski resorts, gambling, and sales of cigarettes to non-Indians. . . . In this economic context, immunity can harm those who are unaware that they are dealing with a tribe, who do not know of tribal immunity, or who have no choice in the matter, as in the case of tort victims.

*Id.* at 758. (citations omitted). Still, the Court refused to abrogate tribal sovereign immunity and, instead, deferred to Congress to make "this important judgment." *Id.*

Just recently, the Supreme Court again considered and reaffirmed the validity of the doctrine of tribal sovereign immunity. In *Michigan v. Bay Mills Indian Community*, 134 S. Ct. 2024, 2036 (2014), the State of Michigan argued that the Court should overrule *Kiowa Tribe* because the tribe was acting as a private business by conducting commercial activities off reservation lands. Michigan requested that the Court abrogate tribal immunity to "level the playing field." *Id.* However, the Supreme Court upheld the doctrine of tribal sovereign immunity. *Id.* at 2038. The Court reasoned that Michigan's arguments were similar to the arguments made in *Kiowa Tribe* and that *stare decisis* prevented the Court from changing course. *Id.* at 2036-37. Thus, once again, the Court found that "it is fundamentally Congress's job, not [the courts], to determine whether or how to limit tribal immunity." *Id.* at 2037.

Despite the harsh consequences that tribal sovereign immunity can cause unsuspecting litigants, courts continue to apply the doctrine in tort cases. *See, e.g.*, *Furry v. Miccosukee Tribe of Indians of Florida*, 685 F.3d 1224 (11th Cir. 2012) (holding that the tribe was entitled to sovereign immunity on a wrongful death claim where the tribe knowingly served excessive amounts of alcohol to the plaintiff's daughter); *Muhammad v. Comanche Nation*

*Casino*, 2010 WL 4365568 (W.D. Okla. Oct. 27, 2010) (holding that the tribe was entitled to sovereign immunity in a slip-and-fall accident that occurred on the tribe's casino premises); *Doe v. Oneida Indian Nation of N.Y.*, 278 A.D.2d 564, 717 N.Y.S.2d 417 (N.Y. App. Div. 2000) (holding that the tribe was entitled to sovereign immunity on a claim for damages that resulted from the plaintiff being pierced by a hypodermic needle left in a bed at the tribe's hotel); *Gallegos v. Pueblo of Tesuque*, 132 N.M. 207, 46 P.3d 668 (N.M. 2002) (holding that the tribe was entitled to sovereign immunity on the plaintiff's claim for damages that resulted from the wind blowing a tribal trash can that struck the plaintiff in the face). Thus, even in seemingly unfair situations, it is still "'settled law'" that a tribe is entitled to tribal sovereign immunity unless Congress abrogated the immunity or the tribe waived the immunity. *Bay Mills Indian Community*, 134 S. Ct. at 2030-31 (quoting *Kiowa Tribe of Okla.*, 523 U.S. at 756).[2]

**II. Waiver**

If the only question in the case were whether a tribe has power to invoke sovereign immunity to preclude an injured customer's tort suit against the tribe, the opinion could end here in favor of the defense. But of course any sovereign can waive its immunity. The Tribe in this case has done so by ordinance of general applicability. When a tribe enacts a waiver of sovereign immunity, does the federal court have jurisdiction to interpret it, either in an original action, or on review from a tribal court decision?

The Court believes the answer is "no," at least in this case. There is no diversity of citizenship. Neither is there a general federal question presented by the scope and application of a tribal sovereign immunity ordinance. Moreover, on the present record, there is no arguable

---

[2] The Supreme Court again reviewed the scope tribal sovereign immunity in *Lewis v. Clarke*, No. 15-1500, 581 U.S. __ (2017). The question in the case was "whether an Indian tribe's sovereign immunity bars individual-capacity damages actions against tribal employees for torts committed within the scope of their employment and for which the employees are indemnified by the tribe." Slip Op. at 1. The Court held that the tribal employee acting within the scope of his employment could not invoke tribal sovereign immunity. *Id.* The case before this Court does not involve any tribal employees sued in their individual capacities.

basis that ties the tribal waiver ordinance to some other federal law requirement—such as the Indian Gaming Regulatory Act or the Indian Civil Rights Act—that might present a federal question. Finally, even if some basis for original subject matter jurisdiction existed, there would still be no basis for this Court to exercise what would amount to appellate review of a tribal court decision.

**A. The Tribal Waiver Ordinance**

To waive tribal sovereign immunity, the tribe's waiver must be "clear." *Oklahoma Tax Comm'n v. Citizen Band Potawatomi Indian Tribe of Okla.*, 498 U.S. 505, 509 (1991). The tribe can limit the scope of its waiver by placing any conditions or limitations on the waiver. *Missouri River Services, Inc. v. Omaha Tribe of Nebraska*, 267 F.3d 848, 852-53 (8th Cir. 2001). Moreover, tribal immunity waivers should be strictly construed. *Id.*

Here, the Tribe clearly waived sovereign immunity on certain tort claims brought under the Tribal Tort Claims Ordinance ("the Ordinance"). The Tribe's waiver provides:

> (1) The sovereign immunity of the Tribe is hereby waived for tort claims brought in accordance with this Chapter. This waiver is subject to all of the restrictions, limitations and procedures set forth in this Chapter. This Chapter is to be strictly construed, and all procedures, restrictions and limitations are to be adhered to strictly. No waiver of any kind is made beyond the scope or outside the limitations and restrictions of this Chapter.
>
> (2) The Tribe consents to suit in the Tribal Court for suits based on tort claims under this Chapter. The Tribe does not consent to suit in any other forum for such claims and specifically preserves and retains its sovereign immunity to any tort suit in any other forum. The Tribal Court shall have jurisdiction over all claims arising under this Chapter.

Tribal Code § 85.104. Notably, the Tribe waived sovereign immunity on tort claims brought under the Ordinance in tribal court only. Thus, the Tribe cannot be sued under the Ordinance in federal courts or state courts.

In addition, Lesperance sued the Tribe under the public buildings provision of the Ordinance, which contains a specific condition to any recovery:

> (2) As a condition to any recovery for injuries sustained by reason of any dangerous or defective public building, the injured person, within 120 days from the time the injury occurred, shall serve a notice on the Tribe of the occurrence of the injury and the defect. The notice shall specify the exact location and nature of the defect, the injury sustained and the names of the witnesses known at the time by the claimant. The notice shall be served on the Tribal Secretary, 523 Ashmun Street, Sault Ste. Marie, Michigan 49783, either personally or by certified mail, return receipt requested.

Tribal Code § 85.106. This type of procedure is not unusual in cases involving sovereign immunity and limited waiver for public buildings, Mich. Comp. Laws § 691.1406, or public highways, Mich. Comp. Laws § 691.1404. The proper interpretation and application of the provisions is the subject of frequent litigation, and sometimes conflicting results. *Compare Hobbs v. Dep't of State Hwys*, 398 Mich. 90, 247 N.W.2d 754 (1976) (holding that even when a plaintiff fails to provide notice within 120 days, the State must also show actual prejudice), and *Brown v. Manistee Cty. Rd. Comm'n,* 452 Mich. 354, 550 N.W.2d 215, 216 (1996) (same), *with Rowland v. Washtenaw Cty. Rd. Comm'n,* 477 Mich. 197, 731 N.W.2d 41 (2007) (holding that the 120-day notice provision must be strictly construed and overruling *Hobbs* and *Brown*).

In this case, the tribal courts ruled that Lesperance failed to comply with the condition as described in Tribal Code § 85.106(2), and that there was no proper basis for an exception to the requirement. Plaintiff says the decision was wrong, and that this Court should correct the error. The Court concludes it lacks jurisdiction to address and resolve the merits of that issue.

### B. This Court's Original Jurisdiction

"Federal courts are courts of limited jurisdiction and the law 'presume[s] that a cause lies outside this limited jurisdiction.'" *Vander Boegh v. Energy Solutions, Inc.*, 772 F.3d 1056, 1064 (6th Cir. 2014) (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)). "[T]he burden of establishing the contrary rests upon the party asserting jurisdiction." *Id.* "'Subject-matter jurisdiction can never be waived or forfeited,' and courts are obligated to consider *sua sponte* whether they have such jurisdiction." *Id.* (quoting *Gonzalez v. Thaler*, 565 U.S. 134, 141 (2012)). *See also* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."). The Court finds no basis for federal subject matter jurisdiction in this case.

#### 1. Diversity

No party has claimed diversity jurisdiction in this matter. Based on an independent review, this Court concludes diversity jurisdiction does not exist because Defendant Tribe is not a citizen of any State for diversity purposes, thus precluding diversity jurisdiction. *See Cohen's Handbook of Federal Indian Law*, § 7.04[1][c] at n.65 (collecting cases).

#### 2. Federal Question

Lesperance asserts that this Court has jurisdiction over this matter because it presents a federal question. Under 28 U.S.C. § 1331, "[t]he district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." "It is well settled that this statutory grant of 'jurisdiction will support claims founded upon federal common law as well as those of a statutory origin.'" *Nat'l Farmers Union Ins. Companies v. Crow Tribe of Indians*, 471 U.S. 845, 850 (1985) (quoting *Illinois v. City of Milwaukee*, 406 U.S. 91, 100 (1972)). The Court finds no basis for federal question jurisdiction.

### a. General Federal Question

At first blush, a case involving injury on property owned by a tribe would almost inevitably seem to involve some federal interest in Indian Affairs. And yet, there is no free-standing jurisdictional grant to the federal courts just because a tribe is involved. As the authoritative Cohen Treatise summarizes:

> Despite the pervasive influence of federal law in Indian affairs, federal court jurisdiction over cases involving Indians and Indian affairs is not automatic. Federal courts are "courts of limited jurisdiction," authorized to act only if granted authority both by constitutional requirements and by federal statute. No statute or constitutional provision outlines any general scheme for the resolution of disputes involving Indian affairs. Thus, federal court jurisdiction is not created by the mere fact that a case involves an Indian party or contract, or tribal or individual Indian property, or merely because it arises in Indian country.

*Cohen's Handbook of Federal Indian Law*, § 7.04[1][a] (footnotes omitted).

Lesperance has not cited any authority in support of the assertion that the issue of whether the tribe waived sovereign immunity under the Tribe's own ordinance presents a federal question under 28 U.S.C. § 1331. Congress has never said that federal courts are the final arbiter of the meaning and application of tribal sovereign immunity ordinances. Moreover because the Tribe can limit the scope of any waiver by placing any conditions or limitations on the waiver, it follows logically that the Tribe ought to have the ability to interpret and apply whatever conditions it imposes. This is what happened in this case. The Tribe waived its immunity on tort claims in tribal court, and the tribal court found that Lesperance did not abide by the conditions of the waiver. Whether the Tribe correctly interpreted and applied its own ordinance does not present a federal question.

Lesperance asserts that the Court must have federal question jurisdiction because the tribal court referenced federal case law when it held that the Tribe was entitled to sovereign

immunity. More than that, Lesperance says the Tribe applied the federal cases erroneously. Specifically, Lesperance argues that *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89 (1990), *United States v. Kwai Fun Wong*, 135 S. Ct. 1625 (2015), and *Glarner v. Dep't of Veterans Admin.*, 30 F.3d 697 (6th Cir. 1994), required the tribal court to apply the doctrine of equitable tolling to this case. But the Tribe is not bound by any of these federal principles in applying and developing its own doctrine of sovereign immunity and waivers of it. So even if the Tribe misinterpreted or misapplied those cases, it would be of no moment. Part of the Tribe's sovereign immunity necessarily means that its own tribal court system gets to make the final call on its own immunity statutes.

As the tribal courts stated in this case, *Irwin*, *Wong*, and *Glarner* do not address tribes or tribal sovereign immunity. Instead, these cases applied the rule that a rebuttable presumption of equitable tolling is applicable to suits against the *United States Government*. Contrary to Lesperance's assertions, these cases do not mandate tribal courts to apply the same rebuttable presumption to suits against Indian tribes in tribal court. In addition, the Sixth Circuit has refused to apply equitable doctrines to cases where a tribe is entitled to sovereign immunity. *See Memphis Biofuels, LLC v. Chickasaw Nation Indus., Inc.*, 585 F.3d 917, 922 (6th Cir. 2009). "This result may seem unfair, but that is the reality of sovereign immunity: "[I]mmunity can harm those who . . . are dealing with a tribe . . . . These considerations might suggest a need to abrogate tribal immunity, [but] . . . we defer to the role Congress may wish to exercise in this important judgment." *Id.* (quoting *Kiowa Tribe of Okla. v. Mfg. Techs., Inc.*, 523 U.S. 751, 758 (1998)).

Lesperance finally asserts that the Court must have federal question jurisdiction because otherwise the exhaustion cases make no sense. In *Nat'l Farmers Union Ins. Companies*

*v. Crow Tribe of Indians*, 471 U.S. 845 (1985), the Supreme Court established the tribal-court exhaustion doctrine. In that case, an insurance company filed suit in federal court to enjoin the tribal court from entering a default judgment against its insured. *Id.* at 847. The question was whether the tribal court had jurisdiction to enter the default judgment. *Id.* The Court held that whether a tribe has the power to compel a non-Indian to submit to tribal court jurisdiction is a federal question under 28 U.S.C. § 1331. *Id.* at 852-53. However, the Court also held that the issue of tribal court jurisdiction must first be analyzed by the tribal court. *Id.* at 856-57. Thus, to challenge whether the tribal court had jurisdiction over an issue in federal court, the litigant must first exhaust tribal court remedies.

Lesperance cited several cases involving tribal court exhaustion to support her argument that this case presents a federal question. However, none of the cases deal with a tribe's construction and application of its own sovereign immunity. Rather all of the cases cited by Lesperance deal with the much different question of how far a tribal court may properly exercise its own jurisdiction over non-Indians. For example, in *Mustang Production Co. v. Harrison*, 94 F.3d 1382 (9th Cir. 1996), the plaintiff challenged whether the tribe had authority to tax oil and gas production on allotted lands. The tribal court determined that the tribe had jurisdiction over the allotted land because it was "Indian country." *Id.* at 1384. The Ninth Circuit reviewed the tribal court's decision on whether the land was in fact Indian country. *Id.* at 1384-85. If the allotted lands were found to not be Indian country as defined by federal law, then the tribal court would have exceeded its civil jurisdiction. *Id.* at 1385. Thus, the plaintiff was challenging whether the tribe had civil jurisdiction. Similarly, in *FMC v. Shoshone-Bannock Tribes*, 905 F.2d 1311 (9th Cir. 1990), the Ninth Circuit reviewed whether the tribal

court had jurisdiction to enforce the Tribal Employment Rights Ordinance against a non-Indian owned company.

Here, Lesperance never argued that the tribal court exceeded its jurisdiction. Nor could she: to the contrary, she brought her claim in the only possible forum that could have provided any relief against the tribal defendant. The tribal courts then ruled that sovereign immunity had not been waived under the tribal ordinance, and "tribal courts are best qualified to interpret and apply tribal law." *Iowa Mut. Ins. Co. v. LaPlante*, 480 U.S. 9, 17 (1987) . It's not a matter of exhaustion, but of power to declare tribal law.

Although this Court does not have federal question jurisdiction over the waiver in this case, other cases could present a different issue. For example, if a tribe's waiver of sovereign immunity is compelled by a Gaming Compact under the Indian Gaming Regulatory Act, 25 U.S.C. § 2701, et seq., a federal question might arise. Similarly, it is at least possible that a waiver could in some situations implicate a claim under Section 1983, the Indian Civil Rights Act, or other federal statutes. But none of these statutes are at issue here.

   3. **Rooker-Feldman Analogy**

Even assuming that this Court had a subject matter basis for original jurisdiction in this case, the Court would still lack jurisdiction to proceed here. That is because the trial-level tribal court and tribal court of appeals have already decided this case. Federal courts do not "readjudicate questions—whether of federal, state or tribal law—already resolved in tribal court absent a finding that the tribal court lacked jurisdiction or that its judgment be denied on comity for some other valid reason." *AT & T Corp. v. Coeur d'Alene Tribe*, 295 F.3d 899, 904 (9th Cir. 2002). *See also Iowa Mut. Ins. Co. v. LaPlante*, 480 U.S. 9, 19 (1987) ("Unless a federal court determines that the Tribal Court lacked jurisdiction, however, proper deference to the tribal court

system precludes relitigation of issues raised by the [plaintiff's claim] and resolved in the Tribal Courts.") Here, Lesperance never argued that the tribal court lacked jurisdiction over her claim, and never had any basis to do so. Thus, this Court may not overturn the tribal courts' judgment.

The same principle applies under the Rooker-Feldman doctrine to litigants who lose in state court and then seek federal district court relief. The Rooker-Feldman doctrine prohibits a federal district court or federal court of appeals from reviewing state court decisions. *See Dist. of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 482 & n.16 (1983); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 415-16 (1923). Even when the state court judgments are clearly unconstitutional, the United States Supreme Court is the only court that has appellate jurisdiction to review the state court judgments under 28 U.S.C. § 1257. Part of the reasoning behind the doctrine is that federal district courts are courts of original jurisdiction and litigants that lost in state court should not be able to relitigate the same case before a federal district court. *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 291 (2005). Of course, tribal court judgments are not state court judgments. Yet, the Supreme Court has repeatedly treated Indian tribes as a separate sovereign and the same respect should be afforded to the tribal courts. *See Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 65 (1978) ("Tribal courts have repeatedly been recognized as appropriate forums for the exclusive adjudication of disputes affecting important personal and property interests of both Indians and non-Indians."); *Iowa Mut. Ins. Co. v. LaPlante*, 480 U.S. 9, 14 (1987) ("We have repeatedly recognized the Federal Government's longstanding policy of encouraging tribal self-government."); *Burrell v. Armijo*, 456 F.3d 1159, 1173 (10th Cir. 2006) ("[T]he federal policies promoting tribal self-government and self-determination instruct us to provide great deference to tribal court systems, their practices, and procedures.").

### III. Potential U.S. or Tribal Constitutional Claims

Lesperance also suggests this case may present a federal question based on two potential "constitutional" claims—a due process claim and an access to the court claim. The potential claims are not well developed. To be sure, if Lesperance had claims under the United States Constitution, the claims would present a federal question under 28 U.S.C. § 1331. However, Lesperance's claims against the Tribe—the only Defendant at this point—cannot arise under the United States Constitution because the Constitution's limits on government action do not generally apply to Indian tribes. *See Kelsey v. Pope*, 809 F.3d 849, 863 (6th Cir. 2016) ("The Bill of Rights and the Fourteenth Amendment do not of their own force apply to Indian tribes."). Similarly, Lesperance's claims do not fit under the Indian Civil Rights Act (ICRA) of 1968, 25 U.S.C. § 1302 et seq. Although Congress enacted the ICRA to impose some provisions of the Bill of Rights and Fourteenth Amendment on the Indian tribes, the ICRA's exclusive remedy in federal court is a writ of habeas corpus. *Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 61-62 (1978). S*ee also Pink v. Modoc Indian Health Project*, 157 F.3d 1185, 1189 (9th Cir. 1998) (holding that the ICRA does not provide a basis for a due process claim). Instead, the IRCA only provides causes of actions that are available in tribal court.

In addition, Lesperance appears to assert that her constitutional claims arise from violations of the Tribe's Constitution and the Tribe's Mission Statement. Assuming this is correct, Lesperance's claims still do not present a federal question for two reasons. First, a claim based on a violation of a tribal constitution does not in itself present a federal question. Second, the plain language of the Bill of Rights in the Tribe's Constitution clearly states that the Tribe's Constitution is applicable only to members of the Tribe. See Constitution and Bylaws of the Sault Ste. Marie Tribe of Chippewa Indians, Art. VIII – Bill of Rights ("All members of the

[Tribe] shall be accorded equal protection of the law under this constitution. No member shall be denied . . . ."). Thus, it appears that the Tribe's Constitution does not even apply to Lesperance because she is not a member of the Tribe. Therefore, Lesperance's due process and access to the court claims do not present a federal question and the Court lacks jurisdiction over this matter.

**Conclusion**

This case illustrates the potentially harsh consequences of well-established doctrines of tribal sovereign immunity when applied to prevent a non-Indian from seeking compensation for injury caused by a defective tribal structure. Plaintiff appears to have suffered significant injury, and to have a viable theory of premises liability. Moreover, the Tribe knew right from the outset of Plaintiff's injuries, and why Plaintiff believed the Tribe was responsible for them. Indeed, the Tribe's own insurance representative initiated contact with Plaintiff and seemingly led Plaintiff down the path toward obtaining compensation from the Tribe. Only after Plaintiff hired an attorney did the tables seem to change and the Tribe decided to assert a technical notice defense to waiver of sovereign immunity. The Court sympathizes with Plaintiff's position. And yet ultimately, the Court is confident that it lacks jurisdiction to act. Congress has not accepted the Supreme Court's repeated invitations to address the potential injustices in this kind of situation, and well-established case law does not permit this Court to act on its own.

Accordingly, this matter is **DISMISSED** for lack of subject matter jurisdiction. The Court takes no position on the merits of the Tribe's interpretation and application of its own ordinance.

**IT IS SO ORDERED**.

Dated:     April 27, 2017              /s/ Robert J. Jonker
                                       ROBERT J. JONKER
                                       CHIEF UNITED STATES DISTRICT JUDGE